### BOLIN v. THOMPSON et al.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

FRAUDULENT CONVEYANCES—INSOLVENT JUDGMENT DEBTOR.

    An insolvent conveyed his residence to his wife for a nominal consideration, and, while one of his creditors was endeavoring to collect a judgment, he transferred his business to another creditor, who knew of the judgment, and on the same day transferred the premises to insolvent's wife, insolvent continuing to run it as his wife's agent. *Held*, that these conveyances should be set aside as fraudulent.

Appeal from trial term, Dutchess county.

Action by Gaius C. Bolin, receiver, against James A. Thompson and others. From a judgment in favor of plaintiff, certain defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

Frank B. Lown, for appellants.
Fred E. Ackerman, for respondent.

GOODRICH, P. J. This action seems to have arisen out of a strife between creditors of the defendant James A. Thompson to secure from him preference in the payment of their respective claims. Thompson had been engaged for many years in the wholesale tobacco business at Poughkeepsie, and at the time of the transactions in

question had five principal creditors. He owed the firm of Hinsdale, Smith & Co. about $8,000, one Garcia $2,200, the defendants Gaylord and Preston $300 and $2,300, respectively, and the Poughkeepsie National Bank, on notes discounted by it for his account, about $11,000. In January of each year Thompson was accustomed to make an inventory of his debts and assets, to ascertain his pecuniary condition. In the view we take of the case, it is not necessary to examine these inventories. Although Thompson claimed that the inventory of January, 1893, showed him to be solvent, when considered in connection with other evidence, it in fact showed him to be insolvent, and the court so found on sufficient evidence. His assets consisted of the store on Main street, in which he was transacting his business, his residence on Market street, and his stock in trade, furniture, and accounts. By deed dated January 5, 1893, he conveyed the residence to his wife, the defendant Clara Thompson, for a nominal consideration; but the deed was not recorded till April, 1895. The store apparently was already mortgaged to nearly its cost and value. On September 27, 1895, Hinsdale, Smith & Co., who had been trying in vain to obtain from Thompson security for its claim, by mortgage or otherwise, sued him, and a judgment was entered on October 19th, on which execution was issued, and returned unsatisfied. Subsequently the plaintiff was appointed receiver in supplementary proceedings issued on such judgment. Meanwhile, on October 3d, Thompson had sent word to Preston to come and see him, and they arranged a plan by which the claim of Preston was to be secured. He was to and did commence an action for his claim of $2,300. Thompson appeared by attorney, and made an offer of judgment for the full amount, which the plaintiff accepted, and judgment was entered accordingly the next day. On the 3d, however, and as part of the arrangement between Preston and Thompson, the latter executed a bill of sale to the former, for the expressed consideration of $2,300, covering certain tobacco in his store, and also the store fixtures, furniture, a horse, etc., all notes under protest, and judgments owned by him. On the same day, Preston executed a bill of sale of the same property to Mrs. Thompson, and she and her husband executed a mortgage on the residence for $2,316, the amount of the judgment. Thompson gave a bill of sale of other parts of his stock to Gaylord, Garcia, and Dickinson, who also were creditors. After the transfer to Mrs. Thompson, she carried on the business with her husband as manager. Thus, while Thompson was nominally stripped of his business and stock in trade, he was still keeping them under his own control. This action was brought to set aside the deeds, mortgages, and bills of sale referred to, and on the trial the court found as matter of fact that the same were fraudulent, and intended to hinder, delay, and defraud Thompson's creditors, and especially the plaintiff. From the judgment entered thereon only the defendants Preston and Gaylord appeal.

While this transaction is somewhat similar to that under consideration in Murphy v. Briggs, 89 N. Y. 446, there is a manifest distinction between them. That was an action by a receiver to set aside as a fraud upon creditors two deeds executed by one Moore

to one Werner, and by the latter to Mrs. Moore; and also two mortgages given by Mrs. Moore, at her husband's request, to the defendant and one Whiting, to secure pre-existing debts of Moore. The court, in the opinion, assumed that the deeds to Werner and Mrs. Moore were fraudulent and void, but held that the mortgagees had no knowledge of the pecuniary condition of Moore, or any actual or constructive notice of the plaintiff's demands. The plaintiff claimed that, as Mrs. Moore had no title, the mortgages must fail, being merely liens on the titles. But the court held that, even although the conveyance to Mrs. Moore was fraudulent as to creditors, and should be declared void, it did not deprive Moore and his wife of the power of entering into an agreement by which, in consideration of a mortgage which was assigned to her, she mortgaged the land to secure Moore's indebtedness, and that such mortgages were only an appropriation of Moore's property to the payment of his honest debts; that, if the title had remained in Moore, he could have done the same thing; that there was no ground for claiming that such transfer was invalid; and that (page 453) "the mortgage was merely applying the property for the benefit of creditors, which was a rescinding of the fraudulent contract, and entering into a new contract for its sale or transfer, which, if made in good faith, will not be contaminated by the fraud of the first contract." The case at bar differs from the Murphy Case in the essential fact that both Gaylord and Preston knew of the claim of Hinsdale, Smith & Co., that an action had been commenced therefor, that Thompson was insolvent, and that during such insolvency he had transferred his residence to his wife for a nominal consideration. In the Murphy Case the court laid stress upon the fact that the mortgagees were ignorant of the insolvency of the debtor, and that there was no bad faith on their part. Preston, on his examination as a witness in the supplementary proceedings against Thompson, in which he testified that about the 1st of October Thompson explained to him the state of his business, and that he had been sued by Hinsdale, Smith & Co., speaking of the interviews of October 3d, said:

"There was no talk between Mr. Thompson and myself about arranging his affairs so that he could continue doing business. There was a plan suggested by which the business might be run in his wife's name. * * * The conversation at the store was that Mr. Thompson was to go on, and do the business for his wife as agent. * * * He told me roughly about his liabilities and assets. There was some talk that he wanted to continue the business in his wife's name. * * * He told me a year ago that he had transferred the Market street property to his wife, up to which time I understood the property was in his name."

This and other testimony abundantly shows that Preston and Thompson arranged the plan which was afterwards carried out,—to transfer the business and stock, fixtures, accounts, and judgments to Mrs. Thompson,—and that, the plan being consummated, the business afterwards was continued by her under the name of the Thompson Tobacco Company, with her husband as manager. The evidence discloses a barefaced attempt, which, by Preston and the Thompsons, was intended to and did hinder, delay, and defraud the creditors of Thompson; and the court so found as matter of fact.

With this finding we agree. Gaylord was a clerk in the employ of Thompson, and stands on the same plane with Preston. The judgment should be affirmed.

Judgment affirmed, with costs. All concur.